1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     SOUTHERN DISTRICT OF CALIFORNIA

10

11  JAWANTA J. LAMBERT,              )  Civil No. 10cv01978 JLS(RBB)
                                     )
12              Plaintiff,           )  **REPORT AND RECOMMENDATION**
                                     )  **GRANTING IN PART AND DENYING**
13  v.                               )  **IN PART DEFENDANTS' MOTION TO**
                                     )  **DISMISS PLAINTIFF'S COMPLAINT**
14  J. MARTINSON; D. URIBE, JR.; L.  )  **[ECF NO. 20]**
    CALDERSON; D. DAVIS; J. SAIS;    )
15  D. FOSTON,                       )
                                     )
16              Defendants.          )
    _____ )
17

18       On September 20, 2010, Plaintiff Jawanta Lambert, a state

    prisoner proceeding pro se and in forma pauperis, filed a Complaint
19
    against Defendants Martinson, Uribe, Jr., Davis, Sais, Calderon,
20
    Foston, and Valenzuela, pursuant to 42 U.S.C. § 1983 [ECF Nos. 1,
21
    7].  Summons was returned unexecuted for Defendant Davis on March
22
    30, 2011 [ECF No. 16].  The remaining six Defendants, Valenzuela,
23
    Calderon, Martinson, Sais, Uribe, and Foston waived service of the
24
    summons and Complaint [ECF Nos. 11-15, 19].
25
         On May 9, 2011, the six appearing Defendants filed a Motion to
26
    Dismiss Plaintiff's Complaint, along with a Memorandum of Points
27
    and Authorities [ECF No. 20].  Lambert's Opposition of Motion to
28
    Dismiss Plaintiff's Complaint was filed on June 30, 2011 [ECF No.

1   24].   On July 13, 2011, Defendants' Reply to Plaintiff's Opposition

2   to Motion to Dismiss Plaintiff's Complaint was filed [ECF No. 25].

3        The Court finds Defendants' Motion to Dismiss suitable for

4   resolution on the papers.   <u>See</u> S.D. Cal. Civ. R. 7.1(d)(1).   The

5   Court has reviewed the Complaint, the Motion to Dismiss and

6   attachment, Lambert's Opposition, and Defendants' Reply.   For the

7   reasons discussed below, the Defendants' Motion to Dismiss should

8   be **GRANTED** in part and **DENIED** in part.

9                      **I.   FACTUAL BACKGROUND**

10       The events giving rise to this lawsuit took place during the

11  Plaintiff's incarceration at Centinela State Prison ("Centinela")

12  in Imperial, California.   (Compl. 1, ECF No. 1.)   Currently,

13  however, Lambert is housed at Kern Valley State Prison in Delano,

14  California.   (<u>Id.</u>)

15       In count one, the Plaintiff contends that on April 21, 2009,

16  Correctional Sergeant Martinson used excessive physical force on

17  Plaintiff.   (<u>Id.</u> at 2, 4.)   After Lambert encountered Martinson,

18  the Defendant addressed Plaintiff in an abusive manner by using

19  derogatory language as opposed to Lambert's proper name.   (<u>Id.</u> at

20  4.)   Lambert asserts that as he left his housing unit for the

21  evening meal service, he told Sergeant Martinson that the language

22  was "uncalled for."   (<u>Id.</u>)   Upon Plaintiff's return to his housing

23  unit, he discovered that someone had entered his cell and left his

24  things in disarray.   (<u>Id.</u>)   Lambert argues that he reported the

25  incident to the officers on duty, who insisted that they had no

26  knowledge of the event.   (<u>Id.</u>)   Defendant Martinson then returned

27  to the housing unit and immediately resumed his verbally abusive

28  behavior toward Plaintiff.   (<u>Id.</u>)

Lambert maintains that Martinson then ordered Plaintiff to assume the position to be handcuffed so that he could be taken to the program office. (Id.) The Plaintiff complied by standing with his back to Martinson, with his arms at his sides. (Id.) At that point, Lambert insists that the Defendant "violently yanked Plaintiff's arm in a show of excessive force, causing Petitioner Lambert to lose equilibrium." (Id.) Sergeant Martinson then grabbed Plaintiff from behind, lifted him off of his feet, slammed him to the ground, and bent his arm up his back until Lambert heard his own shoulder pop. (Id.) Defendant then yanked Plaintiff to his feet and slammed him down on the table where Martinson ultimately placed Lambert in handcuffs. (Id.) The Plaintiff complains that Defendant once again lifted Lambert to his feet and kicked him until he fell to the floor, "dazed and in severe pain." (Id.) This attack caused Plaintiff emotional and mental distress, as well as severe pain in his back, left shoulder, and right knee. (Id.) Lambert argues that Sergeant Martinson violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by using excessive physical force and verbal abuse against Lambert, causing physical, mental, and emotional injury. (Id.)

Next, in count two, Warden Uribe is alleged to have acted with deliberate indifference to Sergeant Martinson's excessive force. (Id. at 2, 5.) Although Uribe is legally responsible for prison operations and the welfare of Centinela inmates, Uribe failed to take action, investigate Plaintiff's allegations against Martinson, or challenge Martinson's version of the events. (See id. at 5.) Lambert urges that Defendant Uribe's failures prevented him from curbing Sergeant Martinson's pattern of abusing inmates. (Id.) As

1  a result, Plaintiff submits, Warden Uribe violated Lambert's right

2  to be free from cruel and unusual punishment "in the form

3  deliberate indifference proximately causing physical mental and

4  emotional injury." (Id.)

5      Lastly, Lambert alleges count three against Defendants Davis,

6  Sais, Calderon, Uribe, and Foston. (Id. at 5-6.) The Plaintiff

7  maintains that Defendants' failure to investigate Lambert's

8  excessive force complaints against Sergeant Martinson illustrates a

9  "pattern of deliberate indifference and proximately caused" the

10 described civil rights violations. (Id. at 6.) By denying

11 Plaintiff's inmate grievance and subsequent appeals, these

12 Defendants reinforced the "already clear message" to departmental

13 officials that unnecessary force would continue to be tolerated and

14 encouraged. (Id.) Lambert argues that under the department's

15 procedural regulations, he has a right to have his complaint

16 investigated. (Id.) The first and second levels of review were

17 not thorough or impartial, Plaintiff asserts, which violated the

18 procedures for processing grievances established by the California

19 Department of Corrections and Rehabilitation ("CDCR"). (Id.)

20 Lambert submits that Defendants' conduct violated his right to be

21 free from cruel and unusual punishment, and infringed on his state

22 and federal rights to procedural due process. (Id. at 5-6.)

23                 **II.  APPLICABLE LEGAL STANDARDS**

24 **A.   Motions to Dismiss for Failure to State a Claim**

25      A motion to dismiss for failure to state a claim pursuant to

26 Federal Rule of Civil Procedure 12(b)(6) tests the legal

27 sufficiency of the claims in the complaint. See Davis v. Monroe

28 Cnty. Bd. of Educ., 526 U.S. 629, 633 (1999). "The old formula --

that the complaint must not be dismissed unless it is beyond doubt

without merit -- was discarded by the Bell Atlantic decision [Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007)]." Limestone

Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir. 2008).

A complaint must be dismissed if it does not contain "enough

facts to state a claim to relief that is plausible on its face."

Bell Atl. Corp., 550 U.S. at 570.  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct.

1937, 1949 (2009).  The court must accept as true all material

allegations in the complaint, as well as reasonable inferences to

be drawn from them, and must construe the complaint in the light

most favorable to the plaintiff.  Cholla Ready Mix, Inc. v. Civish,

382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of Burbank,

352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v.

Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); N.L. Indus., Inc. v.

Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

The court does not look at whether the plaintiff will

"ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232,

236 (1974); see Bell Atl. Corp., 550 U.S. at 563 n.8.  A dismissal

under Federal Rule of Civil Procedure 12(b)(6) is generally proper

only where there "is no cognizable legal theory or an absence of

sufficient facts alleged to support a cognizable legal theory."

Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (citing

Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

1988)).

5

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff."  Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir. 1993); see also Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.") "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside of the pleadings.  Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  "The focus of any Rule 12(b)(6) dismissal . . . is the complaint."  Schneider, 151 F.3d at 1197 n.1.  This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6).  Id. (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993)).

"When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ."  Parks Sch. of Bus., Inc, 51 F.3d at

6

1  1484 (citing <u>Cooper v. Bell</u>, 628 F.2d 1208, 1210 n.2 (9th Cir.

2  1980)).  The court may also consider documents "'whose contents are

3  alleged in a complaint and whose authenticity no party questions,

4  but which are not physically attached to the [plaintiff's]

5  pleading.'"  <u>Sunrize Staging, Inc. v. Ovation Dev. Corp.</u>, 241 F.

6  App'x 363, 365 (9th Cir. 2007) (quoting <u>Janas v. McCracken (In re</u>

7  <u>Silicon Graphics Inc. Sec. Litig.</u>), 183 F.3d 970, 986 (9th Cir.

8  1999)) (alteration in original); <u>see</u> <u>Stone v. Writer's Guild of Am.</u>

9  <u>W., Inc.</u>, 101 F.3d 1312, 1313-14 (9th Cir. 1996).

10  **B.   Standards Applicable to Pro Se Litigants**

11      Where a plaintiff appears in propria persona in a civil rights

12  case, the court must construe the pleadings liberally and afford

13  the plaintiff any benefit of the doubt.  <u>Karim-Panahi v. Los</u>

14  <u>Angeles Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988).  The rule

15  of liberal construction is "particularly important in civil rights

16  cases."  <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992).

17  In giving liberal interpretation to a pro se civil rights

18  complaint, courts may not "supply essential elements of claims that

19  were not initially pled."  <u>Ivey v. Bd. of Regents of the Univ. of</u>

20  <u>Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory

21  allegations of official participation in civil rights violations

22  are not sufficient to withstand a motion to dismiss."  <u>Id.</u>; <u>see</u>

23  <u>also</u> <u>Jones v. Cmty. Redev. Agency</u>, 733 F.2d 646, 649 (9th Cir.

24  1984) (finding conclusory allegations unsupported by facts

25  insufficient to state a claim under § 1983).  "The plaintiff must

26  allege with at least some degree of particularity overt acts which

27  defendants engaged in that support the plaintiff's claim."  <u>Jones</u>,

28  733 F.2d at 649 (internal quotation omitted).

1  Nevertheless, the Court must give a pro se litigant leave to

2  amend his complaint "unless it determines that the pleading could

3  not possibly be cured by the allegation of other facts."  Lopez v.

4  Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Doe v. United

5  States, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, before a pro se

6  civil rights complaint may be dismissed, the court must provide the

7  plaintiff with a statement of the complaint's deficiencies.  Karim-

8  Panahi, 839 F.2d at 623-24.  But where amendment of a pro se

9  litigant's complaint would be futile, denial of leave to amend is

10  appropriate.  See James v. Giles, 221 F.3d 1074, 1077 (9th Cir.

11  2000).

12 **C.  Stating a Claim Under 42 U.S.C. § 1983**

13  To state a claim under § 1983, the plaintiff must allege facts

14  sufficient to show (1) a person acting "under color of state law"

15  committed the conduct at issue, and (2) the conduct deprived the

16  plaintiff of some right, privilege, or immunity protected by the

17  Constitution or laws of the United States.  42 U.S.C.A. § 1983

18  (West 2003); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th

19  Cir. 1986).

20  These guidelines apply to the Defendants' Motion.

21  **III.  DEFENDANTS' MOTION TO DISMISS**

22  Defendants Uribe, Calderon, Valenzuela, Sais, Foston, and

23  Martinson move to dismiss Lambert's Complaint in its entirety for

24  failure to state a claim upon which relief may be granted.  (Mot.

25  Dismiss 1, ECF No. 20.)  The Defendants also assert that they are

26  entitled to qualified immunity.  (Id. Attach. #1 Mem. P. & A. 8.)

27  //

28  //

8

**A.   <u>Defendant Valenzuela</u>**

Correctional Lieutenant Valenzuela argues that Plaintiff has failed to give Defendant notice of the factual basis for any claims against him or the requested grounds for relief.  (<u>Id.</u> at 4.) Because there are no allegations against Valenzuela in the Complaint, Defendant asserts that he should be dismissed.  (<u>Id.</u>) The Plaintiff does not oppose Defendant Valenzuela's Motion to Dismiss.  (<u>See</u> <u>generally</u> Opp'n 1-10, ECF No. 24.)

In the Complaint, Lambert does not direct any substantive allegations against Defendant Valenzuela.  (<u>See</u> <u>generally</u> Compl. 1-9, ECF No. 1.)  Correctional Lieutenant Valenzuela is merely mentioned as a Defendant who "was an agent of the CDCR at all times."  (<u>Id.</u> at 3.)  Lambert does not oppose Valenzuela's Motion, and there is no indication that the Plaintiff can pursue any claim against Defendant.  Consequently, Valenzuela should be **DISMISSED.**

Courts must give a plaintiff leave to amend an allegation unless he could not possibly cure the claim by asserting other facts.  <u>Lopez</u>, 203 F.3d at 1127.  A plaintiff should not be granted the opportunity to amend, however, when doing so would be futile. <u>See</u> <u>James</u>, 221 F.3d at 1077.  Here, there is nothing in Lambert's Complaint or Opposition that suggests he can allege facts against Defendant Valenzuela sufficient state a claim that is plausible on its face.  Therefore, the Plaintiff should not be given leave to amend his pleading to include a claim against Valenzuela.

**B.   <u>Count One:  Defendant Martinson</u>**

In the Motion to Dismiss, Correctional Sergeant Martinson argues that Lambert fails to state an Eighth Amendment excessive force cause of action.  (Mot. Dismiss Attach. #1 Mem. P. & A. 7,

9

ECF No. 20.)  The Defendant maintains that Plaintiff uses the terms, "excessive force," "maliciously," and "sadistically," in a conclusory manner.  (Id.)  Other than severe pain, Lambert does not assert any specific injuries that he suffered as a result of Defendant's purported force.  (Id.)  Martinson further contends, "[E]ven assuming Plaintiff's allegations are accurate, he has not sufficiently described the scene to enable the Court to determine whether the force was reasonable."  (Reply 4, ECF No. 25; see Mot. Dismiss Attach. #1 Mem. P. & A. 7, ECF No. 20.)

Lambert, on the other hand, insists that he has stated an Eighth Amendment claim against Martinson.  (Opp'n 5, ECF No. 24.) Plaintiff argues that he has accused Defendant Martinson of unprovoked and excessive use of force by violently yanking Lambert's arm, lifting him up before slamming him to the ground, and repeatedly kicking him.  (Id. at 3 (citing Compl. 3, ECF No. 1).)  "Plaintiff's allegations are not so vague in their claims that the reader cannot tell what allegedly happened and they are not so unadorned and devoid of facts that they are insufficient to state a claim under section 1983."  (Id. at 4 (citing Jones, 733 F.2d at 649).)  Lambert also submits he sufficiently pleaded that Martinson's actions caused emotional and mental distress as well as severe pain to the back, shoulder, and knee.  (Id. (citing Compl. 3, ECF No. 1).)  The Plaintiff has alleged that the force was not used in a good faith effort to maintain order or security because he had complied with Defendant's orders to "cuff up."  (Id.)

The Eighth Amendment prohibits prison officials from using excessive physical force against inmates.  Farmer v. Brennan, 511 U.S. 825, 882 (1994).  The inquiry is not whether the prisoner

suffered a certain level of injury, but "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  <u>Wilkins v. Gaddy</u>, __ U.S. __, 130 S. Ct. 1175, 1178 (2010) (quotation and citation omitted); <u>Hamilton v. Brown</u>, 630 F.3d 889, 897 (9th Cir. 2011); <u>see</u> <u>Farmer</u>, 511 U.S. at 835-36 (noting that a plaintiff must allege that the defendant used force knowing that harm would occur).  To determine whether a plaintiff has satisfied the malicious and sadistic standard, courts examine the following five factors:  (1) the extent of the inmate's injury; (2) the need for the use of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the defendant; and (5) any efforts made to temper the severity of a forceful response.  <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1184 (9th Cir. 2003) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992)); <u>see</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986); <u>Madrid v. Gomez</u>, 889 F. Supp. 1146, 1247 (N.D. Cal. 1995).

In count one of the Complaint, Lambert argues that on April 21, 2009, he "encountered" Defendant Martinson "who began to address" Plaintiff using derogatory language.  (Compl. 4, ECF No. 1.)  Lambert left his housing unit for meal service, and when he returned, his cell had been entered.  (<u>Id.</u>)  Plaintiff argues that the on-duty officers had no knowledge of the entry.  (<u>Id.</u>)  Next, Defendant returned to the housing unit and "resumed his verbally abusive behavior."  (<u>Id.</u>)  Sergeant Martinson then "instructed the Plaintiff to 'cuff up' . . . to be taken to the program office."  (<u>Id.</u>)  Lambert insists that although he complied, Defendant yanked

and bent Plaintiff's arm, kicked him, and slammed him to the ground.  (Id.)

Based on the contentions in the Complaint, Defendant's argument that Plaintiff has not alleged any specific injuries lacks merit.  (See Mot. Dismiss Attach. #1 Mem. P. & A. 7, ECF No. 20.) As discussed, the Eighth Amendment inquiry is whether the force was applied in a good-faith effort to discipline or in a malicious manner merely to cause harm.  See Wilkins, __ U.S. at __, 130 S. Ct. at 1178.  Although Plaintiff asserts in a conclusory manner that Martinson's conduct was done "maliciously," Lambert has not provided facts illustrating the context surrounding the incident. (See Compl. 4, ECF No. 1.)  For example, Plaintiff fails to describe what events preceded Defendant's verbally abusive statements, or why Martinson needed to escort Lambert in handcuffs to the program office in the first place.  It is therefore unclear whether Martinson's use of force was applied in good faith.  See Wilkins, __ U.S. __, 130 S. Ct. at 1178.

When considering the five factors of the malicious and sadistic standard, Lambert has not stated a claim upon which relief may be granted.  First, with regard to Plaintiff's injuries, he contends that he heard his shoulder pop, was left on the floor in severe pain, and felt serious pain in his back, shoulder, and knee. (Compl. 4, ECF No. 1.)  Lambert also suffered emotional and mental distress.  (Id.)  His injuries is one factor to consider.  Second, Plaintiff has asserted there was no need for the application of force because he complied with Defendant's orders to "cuff up." (Id.)  Third, however, there is insufficient information to determine whether the need for force was disproportionate to the

12

amount of force actually used by Sergeant Martinson.  Fourth, Lambert fails to argue that there was a lack of perceived threat or, fifth, that Defendant did not minimize the force used in response.

Lambert has not pleaded that Defendant exerted an unnecessary and wanton infliction of pain sufficient to satisfy the malicious and sadistic standard.  Martinson's Motion to Dismiss count one should be **GRANTED**.  See Martinez, 323 F.3d at 1184.  Because it is unclear whether the Plaintiff could amend his pleading to include facts sufficient to state an Eighth Amendment excessive force claim against Sergeant Martinson, Lambert should be given leave to amend this cause of action.  Lopez, 203 F.3d at 1127; see James, 221 F.3d at 1077.

**C.    Count Two:  Defendant Uribe**

Warden Uribe contends that he should be dismissed without leave to amend because the Plaintiff "cannot prove" Defendant proximately caused any constitutional violation.  (Mot. Dismiss Attach. #1 Mem. P. & A. 4, ECF No. 20.)  Lambert argues that Uribe violated the Eighth Amendment because he was deliberately indifferent to obvious consequences, but Plaintiff has not alleged facts showing that the warden had any personal knowledge of Sergeant Martinson's purported excessive force.  (Id.)  Other than a conclusory assertion that Uribe's failure to investigate or take disciplinary action constituted deliberate indifference, the warden contends there is no alleged causal link between Uribe and an Eighth Amendment violation, and a link cannot be reasonably inferred.  (Id.; Reply 4, ECF No. 25.)

1    Lambert argues in opposition that he has asserted that Uribe

2  was deliberately indifferent by failing to investigate Plaintiff's

3  allegations or challenge Martinson's account.  (Opp'n 7-8, ECF No.

4  24 (citing Compl. 3-5, ECF No. 1).)  According to Plaintiff, a

5  causal connection can be inferred because supervisory indifference

6  to a subordinate's misconduct may facilitate the constitutional

7  violations inflicted on those in the subordinate's care.  (Id. at

8  8.)  Because he is proceeding pro se, Lambert urges that the Court

9  must give him leave to amend because amendment would not be futile.

10  (See id.)

11    A plaintiff may state a claim for deliberate indifference

12  against a supervisor based on the supervisor's knowledge of, and

13  acquiescence in, unconstitutional conduct by his or her

14  subordinates.  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

15  "A defendant may be held liable as a supervisor under § 1983 'if

16  there exists either (1) his or her personal involvement in the

17  constitutional deprivation, or (2) a sufficient causal connection

18  between the supervisor's wrongful conduct and the constitutional

19  violation.'"  Id. (quoting Hansen v. Black, 885 F.2d 642, 646 (9th

20  Cir. 1989)).  "The inquiry into causation must be individualized

21  and focus on the duties and responsibilities of each individual

22  defendant whose acts or omissions are alleged to have caused a

23  constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633

24  (9th Cir. 1988).

25    A causal connection is established if a defendant sets in

26  motion a series of acts by others or knowingly refuses to terminate

27  a series of acts by others that the supervisor reasonably should

28  have known would lead to a constitutional violation.  Starr, 652

F.3d at 1207-08 (citing <u>Dubner v. City & County of San Francisco</u>,
266 F.3d 959, 968 (9th Cir. 2001)).  "'A supervisor can be liable
in his individual capacity for his own culpable action or inaction
in the training, supervision, or control of his subordinates; for
his acquiescence in the constitutional deprivation; or for conduct
that showed a reckless or callous indifference to the rights of
others.'"  <u>Id.</u> at 1208 (quoting <u>Watkins v. City of Oakland</u>, 145
F.3d 1087, 1093 (9th Cir. 1998)).

Lambert's allegations in the Complaint are insufficient to
state a claim against Uribe.  The Plaintiff generally asserts that
Warden Uribe acted with deliberate indifference to Sergeant
Martinson's Eighth Amendment violation, which "proximately caused"
Plaintiff physical, mental, and emotional harm.  (<u>See</u> Compl. 5, ECF
No. 1.)  Uribe was allegedly deliberately indifferent to the "known
or obvious" consequence that his inaction would cause a deprivation
of Plaintiff's constitutional rights.  (<u>See</u> <u>id.</u>)  As warden,
Defendant is legally responsible for the welfare of all inmates,
yet he failed to take action to "curb the known pattern" of abuse
by Martinson.  (<u>Id.</u>)  Yet, Plaintiff does not allege facts showing
that Martinson's misconduct was a pattern and that the pattern was
known to Uribe.

As pleaded, Lambert has not provided any specific facts
suggesting a causal connection between the warden's general failure
to take disciplinary action or investigate and Martinson's
excessive force against Plaintiff on April 21, 2009.  <u>See</u> <u>Redman v.</u>
<u>City of San Diego</u>, 942 F.2d 1435, 1447 (9th Cir. 1991) (stating
that a plaintiff may state a § 1983 cause of action against a
supervisor when there is an adequate causal connection between the

defendant's breach of duty and the constitutional injury).  Based on Lambert's generalized contentions, the requisite causal connection cannot be reasonably inferred.  See Ashcroft, 556 U.S. at ___, 129 S. Ct. at 1949.  Further, there are no concrete facts suggesting that Uribe improperly supervised Martinson, acquiesced in the excessive use of force, or acted with a reckless or callous indifference Lambert's rights.  See Starr, 652 F.3d at 1208 ("We have held that 'acquiescence or culpable indifference' may suffice to show that a supervisor 'personally played a role in the alleged constitutional violations.'")

Accordingly, Defendant Uribe's Motion to Dismiss count two from the Complaint should be **GRANTED**.  Because it is unclear whether Lambert could amend to allege facts sufficient to state a deliberate indifference claim against Uribe, Plaintiff should be given leave to amend.  Lopez, 203 F.3d at 1127; see James, 221 F.3d at 1077.

**D.    Count Three:  Defendants Sais, Calderon, Uribe, and Foston**

Warden Uribe also argues that Lambert fails to state a claim against him in count three.  (Mot. Dismiss Attach. #1 Mem. P. & A. 6, ECF No. 20.)  Correctional Lieutenant Sais, Associate Warden Calderon, and Chief Appeals Coordinator of CDCR Foston likewise argue that they should be dismissed because Plaintiff fails to state a claim in count three.  (Id.; see also Compl. 2-3, ECF No. 1.)

Defendants Sais, Calderon, Uribe, and Foston insist that they have been sued merely because they are supervisors who used their discretion to deny Lambert's inmate appeals.  (Mot. Dismiss Attach. #1 6, ECF No. 20; Reply 4, ECF No. 25.)  The Defendants argue that

16

1    the conclusory due process allegations against them are

2    insufficient to state a claim.  (Mot. Dismiss Attach. #1 6, ECF No.

3    20.)  Also, Plaintiff's contention that these Defendants are liable

4    for denying his inmate appeals fails because Defendants were not

5    personally involved in the alleged violations and cannot be held

6    liable merely for reviewing grievances.  (Id.)  Sais, Calderon,

7    Uribe, and Foston ask the Court to dismiss count three without

8    leave to amend.  (Id. at 6-7.)

9         Lambert opposes Defendants' arguments by contending that his

10   allegations "may show causation by reasonable inference," and any

11   actual deficiencies in his pleading can be cured by amendment.

12   (Opp'n 5, ECF No. 24.)  The Plaintiff clarifies that his theory of

13   liability is not based on Defendants' review of the appeals.  (Id.

14   at 5-6.)  Rather, liability is based on "'a recognition that

15   supervisory indifference or tacit authorization of subordinates'

16   misconduct may be a causative factor in the constitutional injuries

17   they inflict on those committed to their care.'"  (Id. (quoting

18   Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)).)  Moreover,

19   the Plaintiff contends that he submitted his inmate grievance

20   against Martinson to "nudge" Defendants into doing what they were

21   legally obligated to do, such as taking reasonable steps to protect

22   inmates from physical abuse.  (Id.)  Defendants' refusal to

23   investigate Plaintiff's claim evidences their deliberate

24   indifference because they condoned the pattern of excessive force.

25   (Id.)

26        In count three, Lambert argues that Defendants Sais, Calderon,

27   Uribe, and Foston violated Plaintiff's right to procedural due

28   process, and acted with deliberate indifference.  (See Compl. 5-6,

17

1  ECF No. 1.)  As to procedural due process, Plaintiff contends that

2  he has a right to have his excessive force allegations against

3  Martinson examined and to have an investigator verify the

4  information provided, interview witnesses, and review medical

5  reports.  (Compl. 6, ECF No. 1.)  Correctional Lieutenant Sais was

6  in charge of handling the inquiry into Lambert's complaints against

7  Sergeant Martinson.  (<u>Id.</u>)  Associate Warden Calderon is alleged to

8  have been responsible for denying Lambert's inmate grievance at the

9  first level of review.  (<u>Id.</u>)  The Plaintiff contends that Warden

10 Uribe responded to Lambert's appeal at the second level of review.

11 (<u>Id.</u>)  Chief Appeals Coordinator Foston was in charge of handling

12 all inmate director's level appeals for the CDCR.  (<u>Id.</u>)  Plaintiff

13 submits that the first and second levels of administrative review

14 of his grievance were not thorough or impartial, which violated his

15 right to procedural due process.  (<u>Id.</u>)

16      To plead a procedural due process violation, an inmate must

17 argue that the challenged conduct "present[s] the type of atypical,

18 significant deprivation in which a State might conceivably create a

19 liberty interest."  <u>Sandin v. Connor</u>, 515 U.S. 472, 486 (1995).  A

20 prisoner must allege facts demonstrating an "atypical and

21 significant hardship in relation to the ordinary incidents of

22 prison life" caused by the defendant's procedural omissions.

23 <u>Richardson v. Runnels</u>, 594 F.3d 666, 672 (9th Cir. 2010) (quoting

24 <u>Sandin</u>, 515 U.S. at 486); <u>Neal v. Shimoda</u>, 131 F.3d 818 (9th Cir.

25 1997).  A supervisor may be liable if personally involved in the

26 constitutional deprivation or if there is a sufficient causal

27 connection between the defendant's wrongful conduct and the

28 particular violation.  <u>Starr</u>, 652 F.3d at 1207.

Lambert does not provide any facts demonstrating why the first and second levels of review of his grievance were not "thorough" or "impartial."  See Holden, 978 F.2d at 1121 (explaining that courts do not need to accept conclusory allegations as true).  Even assuming the reviews at the first and second levels were inadequate, it is not clear what role, if any, each supervisory Defendant played in the due process violation.  The Plaintiff only challenges the first and second levels of review.  (See Compl. 6, ECF No. 1.)  Although Lambert alleges that Defendants Calderon and Uribe were responsible for those review levels, there is no indication as to how their reviews were constitutionally deficient. Defendant Sais was purportedly responsible for investigating Lambert's excessive force claims against Martinson, yet there are no facts demonstrating how Sais's investigation was unconstitutional.  Finally, Defendant Foston was allegedly in charge of all director's level appeals for the CDCR, yet Lambert does not plead facts indicating how Foston's conduct rises to the level of a due process violation.  The accusations Plaintiff makes are insufficient to state a procedural due process cause of action.

With regard to deliberate indifference, Lambert argues in count three that by denying his grievance and subsequent appeals, Defendants Sais, Calderon, Uribe, and Foston reinforced the message to departmental staff that unnecessary force would continue to be tolerated and encouraged.  (See Compl. 6, ECF No. 1.)  Further, the Plaintiff contends that Defendants' failure to investigate his excessive force claims shows a "pattern of deliberate indifference [that] proximately caused" a constitutional violation.  (Id.)

"[W]here a defendant's only involvement in allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983." <u>Trueman v. State</u>, No. CV 09-2179-PHX-RCB (DKD), 2010 U.S. Dist. LEXIS 67847, at *10-11 (D. Ariz. June 15, 2010) (citations omitted). "'Only persons who cause or participate in the violations are responsible.  Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.'" <u>K'Napp v. Adams</u>, No. 1:06-cv-01701-LJO-GSA (PC), 2009 U.S. Dist. LEXIS 38682, at *10-11 (E.D. Cal. May 7, 2009) (quoting <u>George v. Smith</u>, 507 F.3d 605, 609-10 (7th Cir. 1007)).

Lambert likewise cannot sustain a deliberate indifference cause of action based on Defendants' denial of his appeals.  <u>See id.</u> at *11 ("Concluding that a supervisory defendant knew of events (either via inmate appeals or personal communication), but did not take corrective action is not sufficient to show that a specific defendant's inaction caused an alleged violation.").  The Plaintiff does not present any facts that shed light on how Defendants' conduct was constitutionally deficient, and the Court is not required to accept Lambert's conclusory allegations as true.  <u>See Sprewell</u>, 266 F.3d at 988.

Accordingly, Defendants Sais, Calderon, Uribe, and Foston's Motion to Dismiss count three should be **GRANTED**.  It is not certain that the assertion of additional facts could not cure these deficiencies however.  Therefore, Lambert should be given leave to

1  amend his procedural due process and deliberate indifference causes

2  of action against Sais, Calderon, Uribe, and Foston.

3  **E.    Qualified Immunity**

4      All six Defendants additionally argue that they are entitled

5  to qualified immunity because Lambert cannot establish a

6  constitutional violation, and reasonable prison officials would not

7  have believed that following institutional policies violated

8  Plaintiff's rights.  (Mot. Dismiss Attach. #1 Mem. P. & A. 8, ECF

9  No. 20; Reply 5, ECF No. 25.)  The Defendants who were involved in

10  processing the inmate appeals argue that they acted objectively

11  reasonable in using their discretion to deny the appeals.  (Reply

12  5, ECF No. 25.)  Lambert responds by asserting that the Defendants

13  are not entitled to qualified immunity because his accusations

14  demonstrate that there were constitutional violations that were

15  well established at the time of the conduct alleged.  (Opp'n 9, ECF

16  No. 24.)

17      "Qualified immunity shields federal and state officials from

18  money damages unless a plaintiff pleads facts showing (1) that the

19  official violated a statutory or constitutional right, and (2) that

20  the right was 'clearly established' at the time of the challenged

21  conduct."  Ashcroft v. Al-Kidd, __ U.S. __, 131 S. Ct. 2074, 2080

22  (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see

23  also Hydrick v. Hunter, 449 F.3d 978, 992 (9th Cir. 2006).  This

24  immunity protects "all but the plainly incompetent or those who

25  knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341

26  (1986).

27      When considering a claim for qualified immunity, courts engage

28  in a two-part inquiry:  Do the facts show that the defendant

21

violated a constitutional right, and was the right clearly
established at the time of the defendant's purported misconduct?
Delia v. City of Rialto, 621 F.3d 1069, 1074 (9th Cir. 2010)
(quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009)).  A right
is clearly established if the contours of the right are so clear
that a reasonable official would understand his conduct was
unlawful in the situation he confronted.  Dunn v. Castro, 621 F.3d
1196, 1199-1200 (9th Cir. 2010) (quotation omitted).  This standard
ensures that government officials are on notice of the illegality
of their conduct before they are subjected to suit.  Hope v.
Pelzer, 536 U.S. 730, 739 (2002) (quotation omitted).  "This is not
to say that an official action is protected by qualified immunity
unless the very action in question has previously been held
unlawful . . . ."  Id.

      "[L]ower courts have discretion to decide which of the two
prongs of qualified-immunity analysis to tackle first."  Al-Kidd,
__ U.S. at __, 131 S. Ct. at 2080; Pearson, 555 U.S. at 236; see
also Delia, 621 F.3d at 1075 (citing Brooks v. Seattle, 599 F.3d
1018, 1022 n.7 (9th Cir. 2010); Bull v. City & County of San
Francisco, 595 F.3d 964, 971 (9th Cir. 2010)).  "If the Officers'
actions do not amount to a constitutional violation, the violation
was not clearly established, or their actions reflected a
reasonable mistake about what the law requires, they are entitled
to qualified immunity."  Brooks, 599 F.3d at 1022 (citing
Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007));
see James v. Rowlands, 606 F.3d 646, 651 (9th Cir. 2010) (quoting
Pearson, 555 U.S. at 232, 236).

1    Courts should generally attempt to resolve this threshold
2    immunity question at the earliest possible stage in the litigation
3    "before expending 'scarce judicial resources' to resolve difficult
4    and novel questions of constitutional or statutory interpretation
5    that will 'have no effect on the outcome of the case.'" <u>Al-Kidd</u>,
6    __ U.S. at __, 131 S. Ct. at 2080 (quoting <u>Pearson</u>, 555 U.S. at
7    236-37); <u>see also</u> <u>Crawford-El v. Britton</u>, 523 U.S. 574, 598 (1998)
8    (noting that the purpose of resolving immunity issues early is so
9    that officials are not subjected to unnecessary discovery); <u>Hunter</u>
10   <u>v. Bryant</u>, 502 U.S. 224, 227 (1991).

11   Here, the Court has recommended that Defendant Valenzuela
12   should be dismissed from the lawsuit without leave to amend.  With
13   respect to Valenzuela, the qualified immunity inquiry may end here.
14   <u>Al-Kidd</u>, __ U.S. at __, 131 S. Ct. at 2080; <u>Pearson</u>, 555 U.S. at
15   236; <u>Rowlands</u>, 606 F.3d at 651.  Yet, the Court has recommended
16   that Lambert's causes of action against Defendants Martinson, Sais,
17   Calderon, Uribe, and Foston be dismissed with leave to amend.  As
18   for these Defendants, any discussion of qualified immunity is
19   premature until, and if, the Plaintiff amends his Complaint.  <u>See</u>
20   <u>Taylor v. Vt. Dep't of Educ.</u>, 313 F.3d 768, 793-94 (2nd Cir. 2002)
21   (explaining that ruling on qualified immunity in the context of a
22   Rule 12(b)(6) motion would be premature because the issue "turns on
23   factual questions that cannot be resolved at this stage of the
24   proceedings."); <u>see also</u> <u>Harlow</u>, 457 U.S. at 818 (stating that
25   government officials are shielded from liability if their conduct
26   does not violate a constitutional right that was clearly
27   established).  Consequently, Defendants Martinson, Sais, Calderon,
28

23

1    Uribe, and Foston's Motion to Dismiss based on qualified immunity

2    should be **DENIED** without prejudice as premature.

3                              **IV. CONCLUSION**

4         Because Lambert does not direct any substantive allegations

5    against Defendant Valenzuela in the Complaint and there is no

6    indication that Plaintiff can state any claim against Defendant,

7    Valenzuela should be **DISMISSED** without leave to amend.   Sergeant

8    Martinson's Motion to Dismiss the excessive force allegation

9    against him in count one should be **GRANTED**.   Because it is unclear

10   whether Lambert could amend this claim to cure the deficiencies

11   explained above, he should be given leave to amend.   Warden Uribe's

12   Motion to Dismiss the deliberate indifference cause of action

13   against him in count two should be **GRANTED** with leave to amend.

14   Defendants Sais, Calderon, Uribe, and Foston's Motion to Dismiss

15   the procedural due process and the deliberate indifference claims

16   against them in count three should also be **GRANTED** with leave to

17   amend.   Finally, the Defendants Martinson, Sais, Calderon, Uribe,

18   and Foston's claim for qualified immunity is premature.

19        This Report and Recommendation will be submitted to the United

20   States District Court judge assigned to this case, pursuant to the

21   provisions of 28 U.S.C. § 636(b)(1).   Any party may file written

22   objections with the Court and serve a copy on all parties on or

23   before January 6, 2012.   The document should be captioned

24   "Objections to Report and Recommendation."   Any reply to the

25   objections shall be served and filed on or before January 20, 2012.

26   //

27

28

                                    24

1  The parties are advised that failure to file objections within the

2  specified time may waive the right to appeal the district court's

3  order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4

5  IT IS SO ORDERED.

6

7  DATE: December 7, 2011                    _____ Ruben Brooks _____

8                                            RUBEN B. BROOKS
                                            United States Magistrate Judge

9  cc:  Judge Sammartino
         All Parties of Record

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28