UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAWANTA J. LAMBERT, <br><br> Plaintiff, <br><br> v. <br><br> J. MARTINSON; et al., <br><br> Defendants. | Case No.: 10cv1978-JLS (RBB) <br><br> **ORDER GRANTING MOTION TO AMEND [ECF NO. 95]; DENYING EX PARTE APPLICATION [ECF NO. 106]; GRANTING MOTION FOR MODIFICATION OF SCHEDULING ORDER [ECF NO. 107]; DENYING MOTION FOR ASSIGNMENT OF COUNSEL [ECF NO. 102]** |

Plaintiff Jawanta J. Lambert ("Lambert"), a state prisoner proceeding pro se and in forma pauperis, filed four motions that are before the Court [ECF Nos. 7, 95, 102, 106, 107].  Three of these motions involve case management deadlines.  First, Lambert submitted a "Motion Giving Amending Opportunity to Cure Admission(s) and Request to Extend the Discovery Cutoff" (the "Motion to Amend"), which was filed nunc pro tunc to February 1, 2016 [ECF No. 95].  On February 12, 2016, Defendant J. Martinson ("Martinson") filed an "Opposition to Plaintiff's Motion to Withdraw Admissions and Extend Discovery Cut-Off" [ECF No. 96].  Plaintiff filed a reply on February 24, 2016 [ECF No. 98].  Next, Lambert filed an "Ex Parte Application for Extension of Time to File Objections/Motions for Discovery Disputes" (the "Ex Parte Application") on April

1

11, 2016 [ECF No. 106].  He also filed a "Motion for Modification of Scheduling Order Regulating Discovery and Other Pre-Trial Proceedings (Doc. 75)" (the "Motion for Modification of Scheduling Order") on April 15, 2016 [ECF No. 107].  Neither of these latter two filings were opposed.

Plaintiff additionally filed an "Ex Parte Motion for Assignment of Counsel, and Supporting Memorandum of Points and Authorities and Declaration" (the "Motion for Assignment of Counsel") on March 31, 2016 [ECF No. 102].  Martinson filed an "Opposition to Plaintiff's Motion for Assignment of Counsel" on April 5, 2016 [ECF No. 103], and Lambert filed a reply on April 25, 2016, with a declaration and two exhibits [ECF No. 108].

For the reasons discussed below, the Motion to Amend [ECF No. 95] is **GRANTED**, the Ex Parte Application [ECF No. 106] is **DENIED**, the Motion for Modification of Scheduling Order [ECF No. 107] is **GRANTED**, and the Motion for Assignment of Counsel [ECF No. 102] is **DENIED**.

## I.  FACTUAL BACKGROUND

The events giving rise to this lawsuit took place while Plaintiff was incarcerated at Centinela State Prison. (Second Am. Compl. 1, ECF No. 63.)[1]  Lambert contends that while leaving his cell on April 21, 2009, he realized that he had forgotten his identification card. (Id. at 3.)  After retrieving his identification from his cell, Plaintiff alleges that he "encountered defendant J. Martinson who began to address plaintiff using derogatory references in an abusive and contemptious [sic] manner." (Id.)  Lambert states that he told Defendant Martinson that his conduct was unreasonable and then Plaintiff went to evening meal services.  (Id.)

Lambert asserts that when he returned from dinner, his cell had been "vandalized" and several items of his personal property had been removed.  (Id.)  He told officers on

---

[1]  The Court will cite to documents as paginated on the electronic case filing system.

duty about this incident, but the officers stated they knew nothing about it.  (Id.)  Plaintiff contends that "[a]t this point Martinson returned to the unit and immediately resumed his verbally abusive behavior[,]" claiming responsibility for raiding Lambert's cell and taking his property.  (Id.)  Plaintiff maintains that he asked Defendant in "a non-threatening demeanor" for a cell search receipt for the property removed from his cell, but his request "seemed to inflame Martinson even more."  (Id.)  Defendant purportedly then ordered Lambert to be put in handcuffs so that he could be taken to the program office to obtain a cell search receipt.  (Id.)  Plaintiff alleges that he complied with the order "by standing with his back to Martinson and with his arms at his sides."  (Id.)  Despite his compliance, Defendant used an excessive amount of physical force against him "by violently yanking plaintiff's arm without provocation in a way that caused plaintiff to experience physical pain and to lose equilibrium and fall toward the stationary steel table that was directly in front of the plaintiff."  (Id.)

Lambert asserts that before he could recover, Martinson aggressively grabbed him from behind in a "bear-hug," lifted him up, and body slammed him to the ground.  (Id. at 3-4.)  Defendant then grabbed Plaintiff's wrist and bent his "arm up his back until plaintiff heard his shoulder pop and cried out in pain helplessly."  (Id. at 4.)  Lambert states that Martinson pulled him back to his feet and then slammed him down onto a steel table, causing Plaintiff to strike his head.  (Id.)  Lambert was then handcuffed and again brought to his feet.  (Id.)  Once standing, Plaintiff maintains that he "was repeatedly kicked with booted feet by defendant until plaintiff fell to the floor dazed and in severe pain."  (Id.)  As a result of this encounter, Lambert complains that he experienced severe pain in his back, shoulder, and knee, as well as emotional and mental distress.  (Id.)  He demands $500,000 in damages.  (Id. at 7.)

## II. PROCEDURAL BACKGROUND

Defendants Uribe, Calderon, Valenzuela, Sais, Foston, and Martinson moved to dismiss Plaintiff's Complaint on May 9, 2011 [ECF No. 20].  On December 7, 2011, the Court issued a report and recommendation that Defendants' motion to dismiss be granted

in part and denied in part [ECF No. 29].  United States District Court Judge Janis L. Sammartino issued an order adopting the report and recommendation on March 12, 2012 [ECF No. 36].  Lambert filed a motion for reconsideration of that order [ECF No. 38], which was denied on March 14, 2013 [ECF No. 40].  On May 21, 2014, Plaintiff filed his First Amended Complaint [ECF No. 46].  Defendants Uribe, Calderon, Sais, Foston, and Martinson moved to dismiss Lambert's First Amended Complaint [ECF No. 47], and this Court issued a report and recommendation that Defendants' motion be granted in part and denied in part on October 9, 2014 [ECF No. 53].  Judge Sammartino adopted this report and recommendation [ECF No. 61], and Plaintiff filed his Second Amended Complaint on April 24, 2015 [ECF No. 63].  Defendant Martinson answered on May 8, 2015 [ECF No. 65].

## III.  DISCUSSION

### A.    The Motion to Amend

On December 9, 2015, Martinson filed a "Motion to Compel Discovery and Deem Requests for Admission Admitted" [ECF No. 84].  The Court granted this motion and deemed the facts sought by Defendant in his requests for admissions admitted, but gave Lambert the option to file a motion to amend or withdraw his admissions by February 11, 2016.  (Order Re: Mot. Invalidate & Mot. Compel 11-12, ECF No. 93.)  The Motion to Amend was filed nunc pro tunc to February 1, 2016 [ECF No. 95].  There, Plaintiff requests that this Court allow him to withdraw or amend his admissions under Rule 36(b).  (Mot. Amend 1, ECF No. 95.)  Lambert argues that "[g]ranting this relief will promote the presentation of the merits of the action, and would not prejudice the defendant in maintaining or defending the action on the merits."  (Id.)  Plaintiff maintains that he has been acting in good faith and that his mistakes were not willful.  (Id. Mem. P. & A. 3.)  Lambert explains that due to a "decompensating mental state," he was rushed to a medical facility and housed in a mental health crisis bed.  (Id.)  He notes that "[i]n this level of care, inmates are not given any legal materials to participate in the discovery

4

proceedings of any case." (Id. at 4.)  He appears to contend that he was unable to request an extension for responding to the requests for admission.  (Id.)

Plaintiff has since been transferred to California State Prison, Corcoran.  (Id.)  He states that although he "is slowly making progress in his recovery, his unhealthy state of mind is highlighted by his 'mistake' in filing a motion to invalidate Defendant's discovery request."  (Id.)  Citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972), Lambert asserts that he "is working hard on meeting his discovery obligations" and that the Court should excuse his actions.  (Id. (citing Haines, 404 U.S. at 520-21).)  Plaintiff contends that in light of the mental health problems he was experiencing, his failure to comply with his discovery obligations was not in bad faith.  (Id.)  He maintains that "[e]quity imputes his intention to fulfill his discovery obligation by the fact that he is in recovery and did cooperate with counsel at a recent deposition."  (Id.)  Lambert moreover argues that withdrawal and amendment of his responses to the requests for admission "would promote the presentation of the merits of the action," (id. at 6), and appears to list how he would amend his responses, (id. at 6-12).  Plaintiff additionally requests that the discovery cutoff in this case be extended, arguing that he has yet to receive evidence he believes Martinson is withholding.  (See id. at 12.)

In his opposition to the Motion to Amend, Defendant asserts that "[t]here has been a pattern of delays by Plaintiff that call into question the genuineness of Plaintiff's contention that his delays in responding to Defendant J. Martinson's discovery requests were due to no fault of his own."  (Opp'n Mot. Amend 1-2, ECF No. 96.)  Martinson notes that this case has been pending since 2010 and argues that Lambert has delayed in responding to discovery and attempts to meet and confer.  (Id. at 2.)  Defendant asserts that despite Plaintiff's contention that he was prevented from answering the requests for admissions because of health issues, "he managed to file the twelve page Motion only five days after this Court entered an Order denying his Motion to Invalidate and granting Defendant's Motion to Compel."  (Id. (citation omitted).)  Martinson disputes that Lambert has been working hard to meet discovery obligations, (id. (citation omitted)),

5

and asserts that he would be prejudiced by permitting Plaintiff to withdraw his admissions, (see id.).  Defendant explains this prejudice as follows:

> The continued delays in this litigation and discovery responses have and continue to make it challenging for Defendant J. Martinson to move forward with the litigation, [and] understand what facts Plaintiff is contesting, to promote his defense towards the ultimate preparation and filing of defendant's dispositive pretrial Motion for Summary Judgment.

(Id.)  Martinson contends that Lambert's health issues do not excuse his failure to engage in the discovery process.  (Id. at 3.)  Furthermore, Plaintiff has had Defendant's discovery requests for over 140 days.  (Id.)  Martinson argues that if the Motion to Amend is granted, the discovery cutoff should be extended only to allow Lambert to withdraw his admissions.  (Id. at 2-3.)  He explains that "Plaintiff has had since this case began to conduct the discovery he desires and attempt to obtain the evidence he believes Defendants are withholding."  (Id. at 3.)  Defendant concludes that Lambert has not shown good cause for extending the discovery deadline.  (Id.)

Plaintiff replies that he has met both parts of the two-prong test under Rule 36(b) for the Court to permit him to withdraw admissions.  (Reply Opp'n Mot. Amend 1-5, ECF No. 98.)  Lambert argues that the first prong "favors allowing plaintiff to withdraw or amend his admissions for good cause showing that the deemed admissions strike at the heart of critical issues in this action."  (Id. at 2.)  "[T]he deemed admissions would practically eliminate any presentation of the merits upon the filing of Defendant's pre-trial motion for summary judgment."  (Id. (citation omitted).)  Plaintiff asserts that these admissions are detrimental to the presentation of his action and are contradicted by his Second Amended Complaint.  (Id. at 2-3 (citing Mot. Compel Attach. #2 Ex. C, ECF No. 84).)  And the deemed admissions would have a "crucial effect" on a motion for summary judgment against him.  (Id. at 3.)

Regarding the second prong, Plaintiff contends that it is Martinson's burden to show prejudice.  (Id. (citing Conlon v. United States, 474 F.3d 616, 623 (9th Cir. 2007).)  Lambert asserts that Defendant does not show prejudice in his opposition but instead

6

complains about Plaintiff's delays.  (Id. at 3-4 (citing Opp'n Mot. Amend 2, ECF No. 96).)  Lambert maintains that these arguments are irrelevant and that "defendant has not pointed to an appreciable prejudice that would be suffered at trial if the deemed admissions are withdrawn[.]"  (Id. at 4 (citing Conlon, 474 F.3d at 623).)

Plaintiff explains why an extension of the discovery cutoff is warranted:

> [G]ood cause exists for an extension of the discovery cut-off as an offsetting grace [period] for the time between October 28, 2015 through December 9, 2015 when plaintiff was admitted to a mental health [crisis] bed for two weeks, and then held in his prison cell pending an institutional classification committee's review of . . . plaintiff's case file, [during] which time he was without legal supplies and access to meaningful legal resources . . . .

(Id. at 5.)  Lambert indicates that he would use this extension solely to allow Martinson to respond to discovery requests already served on Defendant "and meet local rule 26.1 requirements."  (Id. (citation omitted).)

### 1.    Plaintiff's request to withdraw his admissions

Rule 36(b) of the Federal Rules of Civil Procedure provides in part as follows:

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Fed. R. Civ. P. 36(b).  "'The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case.'"  Conlon, 474 F.3d at 622 (quoting Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1995)).  Here, the admissions sought by Martinson go to the very heart of Lambert's case.  Plaintiff alleges that the Defendant subjected him to excessive force under the Eighth Amendment during an altercation.  (See Second Am. Compl. 3-4, ECF No. 63.)  Martinson's requests for admissions ask Lambert, among other things, to admit

7

"that defendant used force commensurate with the circumstances during the incident," "that defendant did not cause you any harm whatsoever," "that you received no physical injuries as a result of the alleged assault by defendant as set forth in your complaint," and "that defendant did not use excessive force." (Mot. Compel Attach. #2 Ex. C, at 17, 18, ECF No. 84.) These admissions directly contradict the allegations in Plaintiff's Second Amended Complaint, (see Second Am. Compl. 3-4, ECF No. 63), and would eliminate the need for Lambert to present the merits of his case, see Conlon, 474 F.3d at 622. Thus, the first half of the test under Rule 36(b) has been met. See Willis v. Buffalo Pumps, Inc., No. 12cv744–BTM–DHB, 2013 WL 1398956, at *1 (S.D. Cal. Apr. 4, 2013) ("The requests for admissions effectively ask Plaintiffs to concede their case. . . . Therefore, the Court finds that upholding the admissions would practically eliminate any presentation of the merits of the case.").

For the second half of the test to amend or withdraw admissions under Rule 36(b), "[t]he party relying on the deemed admission has the burden of proving prejudice." Conlon, 474 F.3d at 622 (citing Hadley, 45 F.3d at 1348). In Hadley, the Ninth Circuit articulated the standard for prejudice under Rule 36(b):

> The prejudice contemplated by Rule 36(b) is "not simply that the party who obtained the admission will now have to convince the factfinder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence" with respect to the questions previously deemed admitted.

Hadley, 45 F.3d at 1348 (quoting Brook Village N. Assocs. v. General Elec. Co., 686 F.2d 66, 70 (1st Cir. 1982)). "When undertaking a prejudice inquiry under Rule 36(b), district courts should focus on the prejudice that the nonmoving party would suffer at trial." Conlon, 474 F.3d at 623. As a result, "[c]ourts are more likely to find prejudice when the motion for withdrawal is made in the middle of trial." Hadley, 45 F.3d at 1348 (citations omitted). By contrast, "reliance on a deemed admission in preparing a

summary judgment motion does not constitute prejudice." <u>Conlon</u>, 474 F.3d at 624 (citations omitted).

Here, the Court agrees with Plaintiff that Martinson has failed to meet his burden of showing prejudice. (<u>See</u> Reply Opp'n Mot. Amend 3-4, ECF No. 98.)  The only prejudice Defendant points to is his difficulty moving forward with the litigation and preparing his motion for summary judgment. (<u>See</u> Opp'n Mot. Amend 2, ECF No. 96.) This is insufficient. <u>See Conlon</u>, 474 F.3d at 624 (citations omitted).  The Court cannot conclude that Martinson would be prejudice by allowing Lambert to withdraw his admissions. <u>See also Willis</u>, 2013 WL 1398956, at *2 ("JCI argues that it is prejudiced because fact discovery closed on November 30, 2012, six days after Plaintiffs' responses were due, and that it has relied on these admissions in preparing its expert witnesses.  The Court finds this insufficient to meet JCI's burden of demonstrating prejudice.").  Thus, the second part of the test under Rule 36(b) has been met

In analyzing a request to withdraw under Federal Rule of Civil Procedure 36(b), "[t]he court may also consider additional factors, such as whether the moving party can show good cause for the delay or has a strong case on the merits[.]" <u>Id.</u> at *1.  Here, while it is unclear whether Plaintiff has a strong case on the merits, Lambert's mental health condition supports a finding of good cause for his delay in responding to the requests for admission.  As a result, this additional factor supports allowing Plaintiff to amend or withdraw his responses to the requests for admission.

Accordingly, Lambert's Motion to Amend is **GRANTED** as to his request to amend his responses to the requests for admissions.  Plaintiff is given until June 30, 2016, to amend these responses.

### 2.   Lambert's request to extend the discovery cutoff

The fact discovery deadline in this case expired on January 25, 2016. (<u>See</u> Case Management Conference Order 1, ECF No. 75.)  Plaintiff's motion to amend his admissions and extend the discovery cutoff was filed nunc pro tunc to February 1, 2016 [ECF No. 95].  The federal rules provide that "[w]hen an act may or must be done within

a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).  "[F]or purposes of Rule 6(b), 'excusable neglect' must be judged by the standard set forth in <u>Pioneer Investment Servs. Co. v. Brunswick Associates Ltd. Partnership</u>, [507 U.S. 380 (1993)]."  <u>Baker v. Ensign</u>, No. 11–cv–2060–BAS(WVG), 2015 WL 5568044, at *1 (S.D. Cal. Sept. 22, 2015) (citations omitted).  <u>Pioneer</u> outlines the following standard for excusable neglect:

> [T]he determination of whether neglect is excusable is an equitable one that depends on at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.

<u>Bateman v. U.S. Postal Serv.</u>, 231 F.3d 1220, 1223-24 (9th Cir. 2000) (citing <u>Pioneer Investment Servs. Co.</u>, 507 U.S. at 395).

The first factor, "the danger of prejudice to the opposing party," <u>Bateman</u>, 231 F.3d at 1223 (citing <u>Pioneer Investment Servs. Co.</u>, 507 U.S. at 395), weighs in favor of extending the discovery cutoff so that Lambert may file his amended responses to Defendant's requests for admission.  In the February 3, 2016 Order finding that Martinson's requests for admissions were deemed admitted, the Court observed that the ruling "[did] not completely resolve the discovery dispute."  (Order Den. Mot. Invalidate & Granting Mot. Compel 10, ECF No. 93.)

> The Plaintiff . . . did not oppose Martinson's Motion to Compel.  But he did serve tardy responses to Defendant's requests for admissions. . . .
>
> The Court will interpret Lambert's attempt to file tardy responses to [Martinson's] requests for admissions as the functional equivalent of a motion to withdraw admissions, especially in light of his status as a pro se prisoner.

(<u>Id.</u> at 11.)

1   The Plaintiff was given leave to file a motion to amend or withdraw his admissions

2   and informed that "[a]ny motion should also address whether it is appropriate to extend

3   the discovery cutoff to allow the withdrawal of deemed admissions and the submission of

4   Plaintiff's response."  (Id.)  Defendant has been aware of the Plaintiff's responses to the

5   requests for admission since January 6, 2016.  (See id. at 10.)  Martinson has had ample

6   time to conduct discovery and prepare a summary judgment motion that does not rely on

7   the tardy admissions.  The Defendant is not prejudiced by extending the discovery cutoff

8   for the purpose of allowing Lambert to file his amended responses to Martinson's

9   requests for admission.  The absence of prejudice supports a finding of excusable neglect.

10  See, e.g., Mireles v. Paragon Sys., Inc., Civil No. 13–CV–122–L (BGS), 2014 WL

11  575713, at *3 (S.D. Cal. Feb. 11, 2014) ("There is no prejudice to Defendant in assigning

12  Plaintiffs a date by which to file a motion to amend the FAC. Therefore, this factor

13  weighs in favor of allowing modification of the scheduling order.").

14  The second Pioneer factor is "the length of the delay and its potential impact on the

15  proceedings." Bateman, 231 F.3d at 1223 (citing Pioneer Investment Servs. Co., 507

16  U.S. at 395).  This factor also weighs in favor of granting an extension of the discovery

17  cutoff.  Lambert filed the Motion to Amend only a week after the fact discovery cutoff.

18  Moreover, the deadline for filing pretrial motions is July 11, 2016, (see Case

19  Management Conference Order 3, ECF No. 75), and as explained above, Martinson has

20  been aware of Lambert's proposed responses since January 6, 2016.  Under these

21  circumstances, a short extension would not negatively impact the proceedings.  All this

22  supports a finding of excusable neglect.  See Pryor v. Aerotek Sci., LLC, 278 F.R.D. 516,

23  522 (C.D. Cal. 2011) ("Pryor filed her application on the day it was due, albeit a few

24  hours later than the deadline set by the court.  The delay did not impact the proceedings

25  in any significant respect.  Thus, the second factor also favors granting plaintiff's request

26  for an enlargement of time.").

27  The third Pioneer factor, the "the reason for the delay," Bateman, 231 F.3d at 1224

28  (citing Pioneer Investment Servs. Co., 507 U.S. at 395), is neutral.  Plaintiff appears to

have had limited access to legal supplies and resources from October 28, 2015, to December 9, 2015.  (<u>See</u> Reply Opp'n Mot. Amend 5, ECF No. 98.)  While Lambert may not have been able to meaningfully participate in discovery during this six-week period, he does not explain why he could not complete discovery from December 9, 2015, to January 25, 2016.  As a result, this factor is neutral.

The Court finds that the fourth <u>Pioneer</u> factor, "whether the movant acted in good faith," <u>Bateman</u>, 231 F.3d at 1224 (citing <u>Pioneer Investment Servs. Co.</u>, 507 U.S. at 395), is also neutral.  The Court is sympathetic to Plaintiff's health issues, but as discussed above, Lambert does not explain why he could not complete discovery between December 9, 2015, and January 25, 2016.  Yet, as there is no evidence that Plaintiff acted in bad faith, this factor is neutral.  <u>See</u> <u>Stiller v. Costco Wholesale Corp.</u>, No. 3:09–cv–2473–GPC–BGS, 2013 WL 5417178, at *4 (S.D. Cal. Sept. 26, 2013) ("The final factor is whether Plaintiffs acted in good faith.  The Court finds there is no evidence of bad faith by the Plaintiffs.  This factor is therefore neutral.").

On balance, the <u>Pioneer</u> factors weigh in favor of finding excusable neglect for Lambert's failure to amend his discovery responses by the January 25, 2016 deadline.  <u>See</u> <u>Pincay v. Andrews</u>, 389 F.3d 853, 860 (9th Cir. 2004) ("[W]e leave the weighing of <u>Pioneer</u>'s equitable factors to the discretion of the district court in every case.").  As a result, the Motion to Amend and his request to extend the discovery cutoff in this case are **GRANTED**.  The discovery deadline to amend Plaintiff's responses to Defendant's requests for admissions is extended to June 30, 2016.

**B.**   **Plaintiff's Ex Parte Application**

In the Ex Parte, Lambert contends that he did not receive the Court's July 30, 2015 scheduling order until March 10, 2016.  (Ex Parte Appl. 1, ECF No. 106.)  He indicates his belief that the deadline for him to file a motion or objection relating to the order is April 7, 2016, and he requests an extension of this deadline to April 15, 2016.  (<u>Id.</u> at 1-2.)  Plaintiff explains that he "has enlisted the assistance of other inmates to prepare a motion or objection in regards to the Court's scheduling order regulating discovery and

other pre-trial proceedings" but "has just been informed that the motion/objection filing is not yet complete." (Id. at 2.)  Lambert notes that he enlisted the help of other inmates "[a]s a result of his significant mental impairment." (Id. at 4.)  Plaintiff states that good cause exists to grant the extension because "[t]he extra time will allow plaintiff to further meet and confer with [Defense] counsel pursuant to local rule 26.1, and to file appropriate documents with this Court." (Id.)

Lambert mailed the Ex Parte Application to the Court on April 6, 2016, and it was filed on April 11, 2016 [ECF No. 106].  He asserts that the deadline he seeks an extension of is April 7, 2016. (Ex Parte Appl. 1, ECF No. 106.)  Plaintiff states that he received the Court's July 30, 2015 Scheduling Order Regulating Discovery on or about March 10, 2016. (Id.)  From that, Lambert appears to conclude that his deadline to raise any objections he has to the discovery schedule was April 7, 2016, because the Court's order states that "[a]ll motions for discovery shall be filed no later than thirty (30) days following the date upon which the event giving rise to the discovery dispute occurred." (See id.)  Plaintiff is requesting additional time to file "objections or motions relating to the court's scheduling order." (Id.)  The language Lambert identifies applies to discovery, not an amendment of, or a change to, a scheduling order.  Yet, he does not identify any intended objections or describe any proposed motions.  Nevertheless, Lambert subsequently filed a Motion for Modification of Scheduling Order [ECF No. 107], which the Court will address separately.  Because the relief that Lambert seeks is covered by his Motion for Modification of Scheduling Order [ECF No. 107], the Ex Parte Application [ECF No. 106] is **DENIED**.

**C.**     **Lambert's Motion for Modification of Scheduling Order**

Plaintiff asks for an extension of three dates in the Court's case management order. (Mot. Modification Scheduling Order 1, ECF No. 107.)  Lambert requests extensions of (1) the discovery cutoff, (2) the deadline for expert designations, and (3) the deadline for expert disclosures. (Id. Mem. P. & A. 7 (citing Conlon, 474 F.3d 616).)  Plaintiff gives several reasons why good cause exists to grant extensions. (See id. at 3-6.)  He notes that

13

he is a pro se litigant and was placed in administrative segregation shortly after the Court's case management order was filed. (<u>Id.</u> at 3-4.) During his time in administrative segregation, Plaintiff "was unable to conduct discovery or further his litigation until cleared to have his personal property and legal files pertaining to this action on or around September 11, 2015." (<u>Id.</u> at 4.) He was subsequently taken to a medical facility for mental health treatment and did not have access to legal materials during that time. (<u>Id.</u>) Lambert was then placed in an outpatient program and was later transferred to California State Prison, Corcoran for mental health treatment. (<u>Id.</u> at 4-5.) Plaintiff explains that "[i]n all, between the July 30, 2015 order and November 25, 2015 plaintiff endured mental health placement for crisis evaluation and [mental health crisis bed] referral on approximately twelve separate occasions." (<u>Id.</u> at 4.) Lambert contends that since his transfer to Corcoran, his "mental state and pro se status have been negatively [affecting] his ability to litigate this action," noting that he "has been having [terrible] nightmares about defendants." (<u>Id.</u> at 5.)

Plaintiff states that during a telephonic meet-and-confer in January regarding his inability to respond to discovery, he explained to defense counsel that he did not have his case records and notes or a copy of the scheduling order. (<u>Id.</u>) Lambert complains that he did not receive his case records and notes from the institution where he was previously incarcerated until March 3, 2016. (<u>Id.</u>) He did not receive the Court's case management order until March 10, 2016. (<u>Id.</u>) By the time he received these documents, the January 25, 2016 fact discovery deadline had passed. (<u>Id.</u>) Lambert explains, "Being that plaintiff learned of the scheduling order with certainty for the first time approximately a month ago, and his repeated attempts to acquire a copy from the court and defendant's counsel it is clear that plaintiff has been diligent in seeking a modification of the scheduling order." (<u>Id.</u> at 5-6 (citing <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d at 609).) Lambert notes that "[w]ithout the Court's scheduling order plaintiff was prejudiced and unable to use the time for discovery effectively." (<u>Id.</u> at 6.) Plaintiff additionally believes that Martinson is withholding evidence from him, explaining that he

has refused to comply with his discovery requests since the close of fact discovery in January.  (See id. (citations omitted).)

As mentioned earlier, the Defendant did not file an opposition to Lambert's Motion for Modification of Scheduling Order.  Nevertheless, the Court will consider the merits of Plaintiff's requests.

Rule 16(b) of the Federal Rules of Civil Procedure states that "[a] [case management] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "The pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)).  "If the party seeking the modification 'was not diligent, the inquiry should end' . . . ."  Id.  "[T]he discovery period should not be extended when a party has had ample opportunity to pursue the evidence during discovery."  Carlson v. Geneva City Sch. Dist., 277 F.R.D. 90, 95 (W.D.N.Y. 2011) (citations omitted).

### 1.    Fact discovery cutoff

Lambert's Motion to Amend the deemed admissions in response to Defendant's requests for admission has been granted.  Additionally, the discovery cutoff for the purpose of serving Lambert's amended responses was extended to June 30, 2016.  The rationale outlined above for permitting Lambert to file amended responses to Martinson's requests for admission is equally applicable to Plaintiff's request to extend the fact discovery deadline.  Accordingly, the Court finds good cause to extend this deadline until July 29, 2016.

### 2.    Deadline for expert designations

Lambert's expert designations were due on February 29, 2016.  (See Case Management Conference Order 2, ECF No. 75.)  The Motion for Modification of Scheduling Order, however, was filed on April 15, 2016 [ECF No. 107].  Consequently,

10cv1978-JLS (RBB)

1  this deadline will only be extended if Plaintiff can show excusable neglect.  <u>See</u> Fed. R.

2  Civ. P. 6(b)(1)(B).

3         Addressing the first factor relevant to excusable neglect, "the danger of prejudice

4  to the opposing party," <u>Bateman</u>, 231 F.3d at 1223 (citing <u>Pioneer Investment Servs. Co.</u>,

5  507 U.S. at 395), this factor weighs in favor of extending the deadline for expert

6  designations.  Notably, it appears that Lambert served his expert designations on

7  Defendant Martinson on March 28, 2016.  (<u>See</u> Notice Doc. Discrepancy Attach. #1

8  Rejected Doc. 3, ECF No. 105.)  The expert discovery deadline in this case was June 6,

9  2016, and the deadline for filing pretrial motions is July 11, 2016.  (<u>See</u> Case

10  Management Conference Order 3, ECF No. 75.)  Given the multiple months between

11  Plaintiff's service of his expert designations and these upcoming deadlines, there is little

12  danger of prejudice to Defendant by extending this deadline.  Accordingly, this factor

13  weighs in favor of finding excusable neglect.  <u>See</u> <u>Mireles</u>, 2014 WL 575713, at *3.

14         As to the second <u>Pioneer</u> factor, "the length of the delay and its potential impact on

15  the proceedings," <u>Bateman</u>, 231 F.3d at 1223 (citing <u>Pioneer Investment Servs. Co.</u>, 507

16  U.S. at 395), this factor also weighs in favor of a finding of excusable neglect.  Expert

17  designations were due on February 29, 2016, (<u>see</u> Case Management Conference Order 2,

18  ECF No. 75), and Lambert served his designation on March 28, 2016, (<u>see</u> Notice Doc.

19  Discrepancy Attach. #1 Rejected Doc. 3, ECF No. 105).  This one-month delay will not

20  negatively impact the proceedings.  (<u>See</u> Case Management Conference Order 3, ECF

21  No. 75.)  This factor weighs in Plaintiff's favor.  <u>See</u> <u>Pryor</u>, 278 F.R.D. at 522.

22         Regarding the third <u>Pioneer</u> factor, the "the reason for the delay," <u>Bateman</u>, 231

23  F.3d at 1224 (citing <u>Pioneer Investment Servs. Co.</u>, 507 U.S. at 395), this factor also

24  supports granting an extension.  Lambert asserts that he did not receive the Court's

25  scheduling order until March 10, 2016.  (<u>See</u> Mot. Modification Mem. P. & A. 5, ECF

26  No. 107.)  By that time, the deadline for Plaintiff to serve his expert designations had

27  already passed.  (<u>See</u> Case Management Conference Order 3, ECF No. 75.)  Given that

28  Lambert received the scheduling order after this deadline had lapsed, the reason for his

delay appears to be his lack of knowledge of the deadline.  This supports a finding of excusable neglect.

Finally, the fourth <u>Pioneer</u> factor, "whether the movant acted in good faith," <u>Bateman</u>, 231 F.3d at 1224 (citing <u>Pioneer Investment Servs. Co.</u>, 507 U.S. at 395), also weighs in favor of Plaintiff.  Notably, while Lambert may not have received the Court's scheduling order until March 10, 2016, he served his expert designation on Defendant eighteen days later, on March 28, 2016.  (<u>See</u> Notice Doc. Discrepancy Attach. #1 Rejected Doc. 3, ECF No. 105.)  As a result, it appears Plaintiff acted diligently to meet this deadline upon learning of it, showing his good faith.  <u>Cf.</u> <u>Molina v. Potter</u>, No. 10–CV–454 JLS (BGS), 2011 WL 1261547, at *3 (S.D. Cal. Apr. 5, 2011) ("Counsel's history of consistently failing to heed discovery deadlines and abide by Court Orders suggests that counsel has not acted in good faith.").  This factor weighs in favor of finding excusable neglect.

On balance, all four of the <u>Pioneer</u> factors support a finding of excusable neglect.  As a result, the Motion for Modification as to Lambert's request to extend the deadline for expert designations is **GRANTED**.  Plaintiff's expert designations, which were served on March 28, 2016, will be deemed timely as of the date served.  The deadline for either party to serve rebuttal expert designations is extended from March 14, 2016, to June 30, 2016.

### 3.    Expert disclosures deadline

Expert disclosures in this case were due on April 18, 2016.  (<u>See</u> Case Management Conference Order 3, ECF No. 75.)  Because the Motion for Modification was filed on April 15, 2016 [ECF No. 107], Lambert need only show good cause for an extension of this deadline.  <u>See</u> Fed. R. Civ. P. 16(b)(4).  In light of the fact that Plaintiff did not receive a physical copy of the scheduling order until March 10, 2016, as well as Lambert's difficulty in participating in the litigation because of his mental health conditions, the Court finds that good cause exists to extend this deadline.  Accordingly, Plaintiff's Motion for Modification as to his request to extend the deadline for expert

disclosures is **GRANTED**.  The deadline for expert disclosures is extended from April 18, 2016, to June 30, 2016.  The deadline for rebuttal disclosures is extended from May 2, 2016, to July 22, 2016.  In light of these extensions, the deadline to complete expert discovery is also extended to August 17, 2016.

**D.      The Motion for Assignment of Counsel**

      **1.      Legal standard**

      The court may request an attorney to represent any person unable to afford counsel."  28 U.S.C.A. § 1915(e)(1) (West 2006).  But "it is well-established that there is generally no constitutional right to counsel in civil cases."  United States v. Sardone, 94 F.3d 1233, 1236 (9th Cir. 1996) (citations omitted).  There is also no constitutional right to appointed counsel to pursue a § 1983 claim.  Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997) (citing Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981)), partially overruled on other grounds by 154 F.3d 952, 954 n.1 (9th Cir. 1998); Burns v. Decarr, No. 07-CV-1984 JLS(WMc), 2011 U.S. Dist. LEXIS 77545, at *1 (S.D. Cal. July 18, 2011).  Federal courts do not have the authority "to make coercive appointments of counsel."  Mallard v. U.S. Dist. Court, 490 U.S. 296, 310 (1989) (discussing § 1915(d)).

      Nevertheless, district courts have discretion, pursuant to 28 U.S.C. § 1915(e)(1), to request attorney representation for indigent civil litigants upon a showing of exceptional circumstances.  See Agyeman v. Corr. Corp. of Am., 390 F.3d 1101, 1103 (9th Cir. 2004) (citing Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir. 1984)).  "A finding of the exceptional circumstances of the plaintiff seeking assistance requires at least an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'"  Id. (quoting Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986)).  "'Neither of these factors is dispositive and both must be viewed together before reaching a decision.'"  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991) (quoting Wilborn, 789 F.2d at 1331).  When examining a plaintiff's ability to proceed pro se, courts generally require, as a threshold matter, the plaintiff to show that (1) he is indigent, and

(2) he "has made a reasonably diligent effort to secure counsel." Bailey v. Lawford, 835 F. Supp. 550, 552 (S.D. Cal. 1993); see Cota v. Scribner, Case No. 09cv2507-AJB (BLM), 2012 U.S. Dist. LEXIS 20460, at *2–3 (S.D. Cal. Feb. 16, 2012).

**2.    Discussion**

**a.    Likelihood of Lambert's success on the merits**

To receive court-appointed counsel, Plaintiff must present a nonfrivolous claim that is likely to succeed on the merits. Wilborn, 789 F.2d at 1331. Lambert's Second Amended Complaint purports to allege a cause of action arising under the Eighth Amendment of the Constitution. (See Second Am. Compl. 3-4, ECF No. 63.)

Plaintiff does not address the likelihood of his success on the merits in the Motion for Assignment of Counsel. (See Mot. Assignment Counsel 1-7, ECF No. 102.) In his opposition to this motion, Martinson contends that Lambert has not shown a likelihood of success. (Opp'n Mot. Assignment Counsel 3, ECF No. 103.) Defendant explains that his "reactionary use of force did not violate the constitution." (Id. at 3.) Additionally, Plaintiff's allegations of abusive and derogatory language "do not further his Eighth Amendment claim." (Id. at 3-4.) Martinson maintains that Plaintiff will not be able to meet his burden of proof and that Defendant's version of the events "is supported by witness statements and medical records." (Id. at 4.) Plaintiff responds that although "it may be too soon to assess plaintiff's likelihood of success on the merits of his eighth amendment claim, plaintiff's claims are not patently unmeritorious and they are supported by witness statements and medical records[.]" (Reply Opp'n Mot. Assignment Counsel 3, ECF No. 108 (citing id. Ex. B).)

The Eighth Amendment prohibits prison officials from using excessive physical force against inmates. Farmer v. Brennan, 511 U.S. 825, 882 (1994). The inquiry is not whether the prisoner suffered a certain level of injury, but "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quotation and citation omitted); Hamilton v. Brown, 630 F.3d 889, 897 (9th Cir. 2011); see Farmer, 511 U.S. at

835-36 (noting that a plaintiff must allege that the defendant used force knowing that harm would occur).  To determine whether a plaintiff has satisfied the malicious and sadistic standard, courts examine the following five factors:  (1) the extent of the inmate's injury; (2) the need for the use of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the defendant; and (5) any efforts made to temper the severity of a forceful response.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

Although Judge Sammartino issued an order denying Defendants' Motion to Dismiss Lambert's First Amended Complaint as to Martinson's actions after handcuffing Plaintiff, (see Order re: R. & R. 12, ECF No. 61), it is too early to determine the likelihood of Lambert's success on the merits on his Eighth Amendment claim.  Without more, it is not certain whether his cause of action will survive summary judgment.  See Harris v. Duc, CASE NO. S CIV 06-2138 DOC, 2009 U.S. Dist. LEXIS 68786, at *10 (E.D. Cal. July 21, 2009) (denying motion to appoint counsel due to insufficient information to assess likelihood of success on merits); see also Bailey, 835 F. Supp. at 552 (same).  This factor does not support his request for an appointed lawyer.

### b.    Plaintiff's ability to proceed without counsel

To be entitled to appointed counsel, Lambert must also show he is unable to effectively litigate the case pro se in light of the complexity of the issues involved.  See Wilborn, 789 F.2d at 1331.  Courts have required that "indigent plaintiffs make a reasonably diligent effort to secure counsel as a prerequisite to the court's appointing counsel for them."  Bailey, 835 F. Supp. at 552.

Here, other than indicating that he "currently lacks any meaningful source of income to utilize in employing services of Counsel to provide experienced legal advice and skills to further the litigation of this case," (Mot. Assignment Counsel 2, ECF No. 102), nowhere in the Motion for Assignment of Counsel does Plaintiff indicate that he is indigent, (see id. at 1-7).  Nor does Lambert show any efforts to find representation.  (See

id.)[2]  These are threshold requirements that Plaintiff must meet, <u>Bailey</u>, 835 F. Supp. at 552; <u>see</u> <u>Cota</u>, 2012 U.S. Dist. LEXIS 20460, at *2-3, and he has not done so.  <u>Cf.</u> <u>McKenzie v. Casillas</u>, Civil No. 12cv1602 BEN (RBB), 2013 WL 1628967, at *2 (S.D. Cal. Apr. 16, 2013) (finding that writing letters to several attorneys and legal clinics showed reasonable diligence).

Despite not meeting these prerequisites, Lambert nevertheless maintains that he is entitled to appointment of counsel.  (<u>See</u> Mot. Assignment Counsel 3-4, ECF No. 102.) Plaintiff first asserts that he "only has limited access to a law library and other materials necessary to facilitate proper legal research; the time permitted to study available legal materials is extremely limited during access periods."  (<u>Id.</u> at 2.)  Defendant does not address this argument in his opposition, (<u>see</u> Opp'n Mot. Assignment Counsel 1-4, ECF No. 103), nor does Lambert discuss it in his reply, (<u>see</u> Reply Opp'n Mot. Assignment Counsel 1-4, ECF No. 108).  Plaintiff argues that his access to the law library is limited, but he has not demonstrated that he is, or will be, denied "reasonable" access.  <u>See</u> <u>Lindquist v. Idaho State Bd. of Corr.</u>, 776 F.2d 851, 858 (9th Cir. 1985).  "[T]he Constitution does not guarantee a prisoner unlimited access to a law library.  Prison officials of necessity must regulate the time, manner, and place in which library facilities are used." <u>Id.</u> (citation omitted).  Lambert has not shown that he does not have reasonable access to a law library or other means of conducting legal research, or that he is subjected to burdens beyond those ordinarily experienced by pro se plaintiffs.

---

[2]  Plaintiff does assert in the declaration attached to his reply that his "efforts to obtain counsel . . . have been all unsuccessful."  (Reply Opp'n Mot. Assignment Counsel Decl. Lambert 4, ECF No. 108.)  Arguments raised for the first time in a reply generally cannot be considered by the Court.  <u>See</u> <u>Bach v. Forever Living Prods. U.S., Inc.</u>, 473 F. Supp. 2d 1110, 1122 n.6 (W.D. Wash. 2007) ("It is well established in this circuit that courts will not consider new arguments raised for the first time in a reply brief.").  But even if the Court were to conclude that Lambert has made reasonably diligent efforts to obtain counsel, the analysis below would remain unchanged.

Plaintiff also contends that he is "a layman at the law with little experience in the complex and confusing methods of legal research, reasoning, and writing." (Mot. Assignment Counsel 2, ECF No. 102.) Lambert explains that he "has virtually no knowledge of proper Federal Procedural Rules, Rules of Court, or Rules of Civil Procedure which are a fundamental necessity and of critical importance to proceed with important discovery and in obtaining certain types of evidence plaintiff believes defendants currently possess or have access to." (Id.) He maintains that he is unaware of what papers he should file and that his attempts to read the Federal Rules of Civil Procedure have left him confused. (Id.)

> Plaintiff has limited formal education and no education in the law. Plaintiff does not understand or comprehend complex legal reasoning, standards, or language when attempting to study case precedent, codes, statutes, and other legal publications. Plaintiff was required to enlist assistance of fellow prisoners with limited knowledge of the law, in order to prepare and file the pleadings previously filed with the court; including this current Motion For Assignment of Counsel. The assistance of fellow prisoners is nearly non-existent due to confinement conditions of my current housing unit; in fact, it is primarily due to pre-printed forms available in the law library plaintiff was able to submit the instant Motion and other papers on file in this action.

(Id. at 3.) Lambert asserts that the issues in his case are complex, which makes it difficult for him to understand how to proceed. (Id.) Plaintiff states that "[t]he issues involved necessitate serious and complex discovery proceedings to be undertaken by plaintiff in order to prepare for further proceedings on summary judgment or preparation for trial." (Id.) He concludes that he has demonstrated that he cannot proceed in his case without counsel. (Id. at 6.)

Martinson responds in his opposition by pointing out the multiple motions for appointment of counsel previously filed by Lambert and denied by the Court and asserts that Plaintiff has "cited no new grounds or changes in facts which would give rise to a change in the Court's previous decisions." (Opp'n Mot. Assignment Counsel 2, ECF No. 103.) Defendant maintains that Lambert's case is not complex, explaining that "[t]his

22

1    case hinges upon a simple question discussed amongst children on a daily basis: who

2    started it?  Once the jury decides that rudimentary factual issue, they must determine

3    whether Officer Martinson's actions constituted excessive force in violation of the Eighth

4    Amendment.  This is also a simple standard." (Id. at 3.)  Martinson argues that this case

5    is not exceptional or complex.  (Id.)

6         In his reply, Plaintiff contends that his "limited education and legal skills

7    significantly impair his ability to represent himself at this stage of litigation, given the

8    complex medical and legal issues presented." (Reply Opp'n Mot. Assignment Counsel 1,

9    ECF No. 108.)  Lambert explains that his Eighth Amendment claim will require expert

10   testimony, (id. at 1-2), noting that Defendant has identified multiple medical experts for

11   trial, (id. at 2 (citing id. Ex A)).  As a result, "the court should provide an opportunity for

12   submission of expert medical and mental health assessments on behalf of plaintiff." (Id.)

13   Lambert reiterates the complexity of the issues in his case, (see id.), and argues that "the

14   opinion of medical and mental health experts on plaintiff's behalf may be beneficial to

15   ensure the jury's balanced assessment of the case at trial, and such experts can reasonably

16   be obtained 'only' by appointment of pro bono counsel[,]" (id. at 3).  Consequently, "the

17   court should direct the appointment of counsel, who may choose to retain expert medical

18   and mental health witnesses on plaintiff's behalf." (Id.)

19        Lambert is only entitled to appointed counsel if he can show "that because of the

20   complexity of the claims[,] he [is] unable to articulate his positions." Rand, 113 F.3d at

21   1525.  Plaintiff has sufficiently alleged his claims in the Second Amended Complaint

22   [ECF No. 63].  There, Lambert recited the facts underlying his claim against Martinson.

23   See Agyeman, 390 F.3d at 1103 (explaining that a finding of exceptional circumstances

24   justifying appointment of counsel requires an evaluation of plaintiff's ability to articulate

25   his claims); Pough v. Almager, CASE NO. 08cv1498 JM(RBB), 2010 U.S. Dist. LEXIS

26   51782, at *1-3 (S.D. Cal. May 26, 2010) (finding no exceptional circumstance due to

27   factual complexity because plaintiff grasped "the legal issues involved" and was able to

28   "adequately set[] forth a factual basis for his claims"); Shields v. Davis, No. C 07-0157

RMW (PR), 2008 U.S. Dist. LEXIS 90687, at *2-3 (N.D. Cal. Oct. 22, 2008) (denying motion for appointment of counsel because the case was "not particularly complex").

Further, among other filings in this case, Plaintiff has filed two motions for leave to proceed in forma pauperis, a motion for extension of time to file an opposition to Defendants' first motion to dismiss, an opposition to Defendants' first motion to dismiss, objections to the Court's first report and recommendation, a motion for reconsideration of Judge Sammartino's order adopting that report and recommendation, an opposition to Defendants' second motion to dismiss, objections to the Court's second report and recommendation, and four motions to appoint counsel [ECF Nos. 2, 3, 5, 22, 24, 34, 38, 43, 50, 57, 68, 102]. Lambert has proven able to adequately represent himself. See Plummer v. Grimes, 87 F.3d 1032, 1033 (8th Cir. 1996) (concluding that the district court did not abuse its discretion in denying plaintiff counsel, in part because plaintiff adequately filed a complaint and other pretrial materials); Harris, 2009 U.S. Dist. LEXIS 68786, at *11-13 (finding no exceptional circumstances, in part, because plaintiff was able to submit adequate documentation and motion work). Moreover, Plaintiff's anticipated need for expert testimony does not warrant a finding of exceptional circumstances. See Rand, 113 F.3d at 1525 (holding that while appellant might have fared better with counsel during discovery and in securing expert testimony, this is not the test).

Accordingly, Lambert has failed to demonstrate exceptional circumstances that justify the assistance of counsel, including that he is likely to succeed on the merits and that he is unable to represent himself (beyond the ordinary burdens encountered by persons representing themselves). As a result, the Motion for Assignment of Counsel is **DENIED** without prejudice.

## IV.  CONCLUSION

For the reasons discussed, Plaintiff's Motion to Amend [ECF No. 95] is **GRANTED**. Lambert shall be given until June 30, 2016, to amend his responses to the requests for admissions. Plaintiff's Ex Parte Application [ECF No. 106] is **DENIED**.

The Motion for Modification of Scheduling Order [ECF No. 107] is **GRANTED**.  The fact discovery deadline is extended through July 29, 2016.  Plaintiff's expert designation, served on March 28, 2016, is deemed timely.  The deadline for either party to serve rebuttal expert designations is extended to June 30, 2016.  The deadline for expert disclosures is also extended to June 30, 2016.  The deadline for rebuttal disclosures is extended to July 22, 2016.  The expert discovery deadline is extended to August 17, 2016.  Plaintiff's Motion for Assignment of Counsel [ECF No. 102] is **DENIED** without prejudice.

     IT IS SO ORDERED.


DATED:  June 9, 2016

                                       Hon. Ruben B. Brooks
                                       United States Magistrate Judge




cc:    Judge Sammartino
        All Parties of Record

10cv1978-JLS (RBB)